EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Alberto O. Bacó, en su carácter de Administrador del Fondo del Seguro del Estado, Ex-rel: Enrique Castillo De Jesus | |
|---|---|
| Demandantes-Recurridos | Certiorari |
| V. | 2000 TSPR 111 |
| Almacén Ramón Rosa Delgado, Inc. y Royal Insurance Co. of P.R. Demandados-Peticionarios | |

Número del Caso:  CC-1998-0041

Fecha: 30/06/2000

Tribunal de Circuito de Apelaciones:  Circuito Regional III

Juez Ponente:  Hon. Rivera Pérez

Abogados de la Parte Peticionaria:

   Arias Cestero & Arias Guardiola
   Lcdo. Amancio Arias Guardiola
   Lcda. Carmen S. Vélez Vázquez

Abogados de Alberto O. Bacó:

   Lcdo. Miguel A. Chaar Cacho
   Lcdo. Francisco Falú Lebrón

Abogado de Ramón Rosa Delgado, Inc.:

   Lcdo. Antonio Pérez Bayón

Abogado de White Rock Corporation:

   Lcdo. Pedro Toledo González

Materia:  Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO**Error! Bookmark not defined.**

Alberto O. Bacó, en su carácter
de Administrador del Fondo del
Seguro  del Estado, Ex-rel:
Enrique Castillo de Jesús

    Demandantes-Recurridos


       v.                     CC-98-41      Certiorari


Almacén Ramón Rosa Delgado
Inc. y Royal Insurance Co.
of P.R.

    Demandados-Peticionarios


Opinión del Tribunal emitida por el Juez Presidente señor Andréu García


San Juan, Puerto Rico, a 30 de junio del 2000

      Nos expresamos en esta ocasión sobre la aplicabilidad de la doctrina angloamericana res ipsa loquitur en nuestra jurisdicción.  Al así hacerlo, nos guiamos por la máxima de derecho de responsabilidad civil extracontractual que hemos reconocido y adoptado como norte desde hace ya más de dos décadas, y que parecería innecesario recalcar: el derecho de daños en Puerto Rico se rige, tanto en su forma como en su contenido, por las normas del derecho civil.

I

      El recurrido Enrique Castillo de Jesús ("Castillo") sufrió un accidente del trabajo cuando fue enviado por su patrono en una camioneta tipo "van" a recoger unas mercancías al Almacén Rosa ("Almacén").  Había terminado Castillo de colocar toda la mercancía

en la camioneta, cuando los empleados del Almacén le informan que su jefe había ordenado, vía telefónica, dos (2) cajas de botellas de agua de soda. La prueba indica que un empleado del Almacén transportó esta última mercancía en dos cajas de madera, con la parte de arriba descubierta hasta la mitad de la altura de las botellas. Para ello, utilizó un carretón de dos ruedas macizas, recorriendo –desde el Almacén hasta la camioneta– una distancia de cuarenta (40) a cincuenta (50) pies, aproximadamente.

Cuando el señor Castillo levantó la primera caja del carretón, y se disponía a ubicarla en la parte trasera de la camioneta, una de las botellas explotó, recibiendo de este modo un golpe en el ojo derecho.

En cuanto al modo en que se atendía la mercancía, el tribunal sentenciador concluyó que ésta llegaba al Almacén y era estibada en su parte interior por un empleado. Las estibas eran de una altura de cinco (5) a seis (6) pies, colocándose las cajas de agua unas encima de las otras. Usaban una escalera para bajar las cajas de las estibas. Dentro del almacén no había aire acondicionado, por lo que la mercancía estaba bajo temperatura ambiental.

Con los hechos descritos en los párrafos que preceden, el Tribunal de Primera Instancia concluyó que la parte demandada peticionaria era responsable de los daños por virtud de la doctrina res ipsa loquitur.[1] Oportunamente, y previa apelación, el Tribunal de Circuito de Apelaciones confirmó, estimando que se probaron los criterios para la aplicación de la doctrina mencionada y que no se probó que el tribunal de instancia haya apreciado la prueba con pasión, prejuicio o parcialidad.

---

[1] **Es interesante que dicho tribunal dictó sentencia parcial en la que desestimó la demanda contra el manufacturero y el distribuidor del agua de soda, pues concluyó que contra ellos no se cumplieron los requisitos para invocar exitosamente la doctrina de *res ipsa loquitur*. Sólo permitió la acción contra el Almacén aquí peticionario, a quien condenó a pagar al Fondo del Seguro del Estado la cantidad de $31,626.33, más la suma de $80,000.00 al señor Castillo "por concepto de daños y perjuicios ocasionados a éste".**

Por entender que no se probó que se haya configurado la causa de acción, según exige el Art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. § 5141, revocamos.[2]

II

Como hemos dicho en tantas ocasiones, el derecho de daños en Puerto Rico se rige, en forma y contenido, por las normas del derecho civil. Gierbolini v. Employers Fire Ins. Co., 104 D.P.R. 853, 855 (1976); Valle v. Amer. Inter. Ins. Co., 108 D.P.R. 692, 695-697 (1979); Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8, 15-16 (1987); Elba A.B.M. v. U.P.R., 125 D.P.R. 294, 308 (1990). Hemos catalogado como necesario, además, el desarrollo y protección de un derecho autóctono puertorriqueño. A & P Gen. Contractors v. Asoc. Caná, 110 D.P.R. 753, 762 (1981); Rodríguez Rodríguez v. Colberg Comas, 131 D.P.R. 212, 216-217 (1992). En ese sentido, conviene repasar los orígenes y delineamientos de la llamada doctrina res ipsa loquitur y su interacción con nuestro sistema de derecho en este campo.

Se traza el origen de esta doctrina al año 1863, en Inglaterra, cuando el Barón Pollock, contestándole a un abogado en un caso de "torts", argumentó: "[t]here are certain cases of which it may be said res ipsa loquitur... [t]he mere fact of the accident having occured is evidence of negligence...". Henderson, J. A., The Torts Process, 2d ed., 1981, Little, Brown & Company, a las págs. 428-429; Morris, C., Morris on Torts, 2d ed., 1980, Foundation Press, a la pág. 117. Desde entonces, la doctrina ha ido desarrollándose jurisprudencialmente, y al día de hoy lo que tenemos es una doctrina fuertemente criticada, confusa e incierta, que ha sido fuente de muchos problemas para los tribunales, y que según reputados comentaristas, debe ser incluso descartada completamente. W. L. Prosser, Law of Torts, 4th ed., 1971, a las págs. 213-214. El decano Prosser, junto a otros juristas, ha insistido en que la doctrina res ipsa

---

[2] **Este artículo reza**: "El que por acción u omisión causa daño a otro, *interviniendo culpa o negligencia*, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización."

loquitur no es más que un estorbo, y como tal, debe ser echada al olvido. W. L. Prosser, The Procedural Effect of Res Ipsa Loquitur, 20 Minn. L. Rev. 241, 258 (1936), y Res Ipsa Loquitur in California, 37 Cal. L. Rev. 183, 234 (1949).[3]

Desde el primer tercio del pasado siglo, en Potomac Edison Co. v. Johnson, 152 A. 633 (Md. 1930), en su opinión disidente, el Juez Presidente Bond se expresó sobre la doctrina res ipsa loquitur como sigue: "It adds nothing to the law, has no meaning which is not more clearly expressed [] in English, and brings confusion to our legal discussions. It does not represent a doctrine, is not a legal maxim, and is not a rule." Por su parte, Lord Shaw, en Ballard v. North British R. Co., Sess. Cas., H. L., 43 (1923), según citado en Prosser, Law of Torts, supra, expresó que "if that phrase had not been in Latin, nobody would have called it a principle".[4]

---

(Énfasis suplido).

[3] Véase, en igual sentido, O. C. Adamson, II, Medical Malpractice: Misuse of Res Ipsa Loquitur, 46 Minn. L. Rev. 1043, 1043-1044 (1962).

[4] La doctrina res ipsa loquitur, desde luego, no goza de aceptación unánime en el derecho angloamericano, donde surgió. Hasta donde alcanza nuestra búsqueda, advertimos tres jurisdicciones que han rechazado expresamente la aplicación de la doctrina de referencia. Así, Carolina del Sur, Brown v. Ford Motor Company, 287 F. Supp. 906, 910 (1968); Crider v. Infringer Transportation Company, 148 S.E. 2d 732, 735 (1966); Bellamy v. Hardee, 129 S.E. 2d 905, 908 (1963); Boyd v. Marion Coca Cola Bottling Company, 126 S.E. 2d 178, 179 (1962); McLain v. Carolina Power & Light Company, 286 F. 2d 816, 819 (1961); Michigan, Mc Lennan v. Home Depot U.S.A., Inc., 10 F. Supp. 2d 837, 838-839 (1998); Conerly v. Liptzen, 199 N.W. 2d 833, 836 (1972); Lipsitz v. Schechter, 134 N.W. 2d 849, 850 (1965); Mitcham v. City of Detroit, 94 N.W. 2d 388, 391 (1959); Welty´s Estate v. Wolf´s Estate, 76 N.W. 2d 52, 59 (1956); Spiers v. Martin, 58 N.W. 2d 821, 822 (1953); y Pennsylvania, donde para aplicar unos criterios equivalentes a la doctrina se precisa que el demandado tenga, en atención al demandante, una relación enmarcada en el "highest degree of care", Joyner v. Septa, 736 A. 2d 35, 39 (1999); Gilbert v. Korvette, Inc., 327 A. 2d 94, 97 (1974); Veneziale v. Carr, 155 A. 2d 638, 640-641 (1959); Skeen v. Stanley Co. of America, 66 A. 2d 774, 775 (1949).

Incluso en jurisdicciones donde sí se aplica la doctrina, se ha dicho que la misma es de utilidad muy limitada, y que debe aplicarse cuidadosa y poco frecuentemente, sólo en casos excepcionales donde los hechos específicos lo ameriten y las exigencias de la justicia lo hagan esencial. Sin ánimo de ser exhaustivo, y a manera ilustrativa, véase Kmart v. Bassett, 2000 WL 430029 (Ala.); McDougald v. Perry, 716 So. 2d 783, 785 (Fla. 1998); Woodward v. Mettille, 400 N.E. 2d 934, 943 (Ill. 1980); Goodyear Tire & Rubber v. Hughes Supply, Inc., 358 So. 2d 1339, 1341-1342 (Fla. 1978); Cousins v. Henry, 332 So. 2d 506, 508 (La. 1976).

Advertimos, además, la interesante tendencia que se exhibe en diversas jurisdicciones estatales norteamericanas en el sentido de

En Puerto Rico la llamada doctrina de res ipsa loquitur se introdujo jurisprudencialmente, a principios del Siglo 20, en Rosado v. Ponce Railway & Light Co., 18 D.P.R. 609, 632-634 (1912). Ello se reiteró, aunque sin fundamentarse, en Rosado v. Ponce Ry. and Light Co., 20 D.P.R. 564 (1914). Ésta requiere la conjunción de tres hechos: (1) de ordinario, el accidente no debe ocurrir a no ser por la negligencia de otra persona; (2) debe causarlo una agencia o instrumentalidad dentro del control exclusivo del demandado; y (3) no debe ocurrir debido a acción voluntaria alguna del demandante. Nieves López v. Rexach Bonet, 124 D.P.R. 427, 437 (1989); Marrero, Marrero, Ríos v. Albany Ins. Co., 124 D.P.R. 827, 831 (1989).

III

El Código Civil de Puerto Rico y las Reglas de Evidencia proveen soluciones a casos como el que tenemos ante nuestra consideración, sin necesidad de referirnos a la llamada doctrina res ipsa loquitur. Es por ello que cuando rehusamos referirnos a tal doctrina, no se crea un vacío, sino que sólo nos remitimos a nuestro derecho positivo, sin necesidad de importaciones judiciales que son innecesarias.

El Art. 1168 del Código Civil, 31 L.P.RA. sec. 3261, ordena -inter alia- que la prueba de las obligaciones incumbe al que reclama su cumplimiento. De igual modo, la Regla 10(A) de Evidencia dispone que el peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por ninguna de las partes.

La Regla 10(H) de Evidencia, por su parte, dispone:

> Cualquier hecho en controversia es susceptible de ser demostrado mediante evidencia directa o mediante evidencia indirecta o circunstancial. Se entiende por evidencia directa aqu[é]lla que prueba el hecho en controversia sin que medie inferencia o presunción alguna, y que de ser cierta demuestra el hecho de modo concluyente. Se entiende por evidencia indirecta o circunstancial aqu[é]lla que tiende a demostrar el hecho en controversia probando

---

excluir explícitamente la aplicabilidad de la doctrina res ipsa loquitur específicamente a los casos de impericia médica. Priest v. Lindig, 583 P.2d 173, 175-176 (Alaska 1978); D.P. & R.P. v. Wrangell General Hospital, 2000 WL 641055 (Alaska), op. dis. Carpeneti, J.; Seippel-Cress v. Lackamp, M.D., 2000 WL 661302 (Mo. App. W.D.); Swope v. Printz, 468 S.W.2d 34, 39 (Mo. 1971); Langton v. Brown, 591 S.W.2d 84, 88 (Mo. App. 1979).

otro distinto, del cual —en unión a otros hechos ya establecidos— puede razonablemente inferirse el hecho en controversia. (Énfasis suplido).

La característica fundamental de la prueba circunstancial es, pues, que la evidencia ofrecida, aunque fuere creída, no es, de suyo, suficiente para probar el hecho que se pretende probar con ella, sino que se requiere un proceso de inferencias en conjunción con otra evidencia ya admitida o por admitirse, o un razonamiento basado en la experiencia y las inferencias que hace una persona razonable. La expresión evidencia circunstancial obedece a que se trata de que las circunstancias apuntan en dirección favorable a la inferencia. E. L. Chiesa, Tratado de Derecho Probatorio, t. II, a la pág. 1239. Por supuesto, al considerar la evidencia circunstancial aducida para probar un hecho, el juzgador debe reconocer la distinción entre aquélla que es una mera conjetura y la que es inferencia razonable. Ortiz Torres v. K & A Developers, Inc., 136 D.P.R. 192, 200 (escolio 8)(1994); Vda. de Delgado v. Boston Ins. Co., 99 D.P.R. 714, 724 (1971).

Sobre lo anterior, hemos resuelto que la prueba o evidencia circunstancial es intrínsecamente igual a la prueba o evidencia directa. Pueblo v. Pagán, Ortiz, 130 D.P.R. 470, 479 (1992); Pueblo v. López Rodríguez, 118 D.P.R. 616 (1987); Pueblo v. Rivera Rivera, 117 D.P.R. 283 (1986). Si un caso penal se puede probar mediante prueba circunstancial, Pueblo v. Areche Holdum, 114 D.P.R. 99, 107-108 (1983), cuanto no más uno en la zona civil. E. L. Chiesa, Tratado de Derecho Probatorio, t. II, pág. 1238. No existe duda, pues, que bajo nuestro derecho probatorio, la negligencia en los casos de daños es susceptible de ser probada, al igual que cualquier otro hecho en cualquier caso, mediante prueba circunstancial. Id. Véase, además, Rodríguez v. Ponce Cement Corp., 98 D.P.R. 201, 207-208 (1969); Murcelo v. H.I. Hettinger & Co., 92 D.P.R. 411, 426-427 (1965).

Por otro lado, la Regla 14 de Evidencia dispone cuál será el efecto de las presunciones en casos de naturaleza civil. Así, le impone a la parte contra la cual se establece la presunción el peso de la prueba para

demostrar la inexistencia del hecho presumido. Es decir, esta regla dispone que la parte contra la cual se establece la presunción viene obligada a ofrecer evidencia so pena de que el juzgador acepte la existencia del hecho presumido. Pueblo v. Vázquez Méndez, 117 D.P.R. 170, 176 (1986).[5] Nada añade a lo anterior la llamada doctrina o principio de res ipsa loquitur. Por tanto, queda claro que nuestro ordenamiento jurídico en materia de daños no precisa recurrir o hacer referencia a tal doctrina. Tampoco hace falta importar otras teorías ajenas a nuestro derecho probatorio, en vista de que el alegado vacío que se pretende conjurar no existe.

IV

Hemos resuelto que la doctrina res ipsa loquitur sólo se refiere a un simple mecanismo procesal, no sustantivo. Es decir, se trata de una inferencia permisible de negligencia que autoriza, pero no obliga, al juzgador a concluir que hubo negligencia. Ramos v. A.F.F., 86 D.P.R. 603 (1962). Esta doctrina, exclusiva de los casos de daños y perjuicios, no tiene el efecto de crear una presunción de negligencia. No es presunción –según se ha utilizado en nuestra jurisdicción- por cuanto el juzgador, aunque se haya establecido el hecho básico y el demandado no haya presentado prueba alguna para refutar dicho hecho, no está obligado a inferir la existencia de negligencia; y segundo, si se presenta prueba que refuta la inferencia de negligencia, el peso de la prueba permanece en el demandante. E. L. Chiesa Aponte, Tratado de Derecho Probatorio, 1998, T. II, a las págs. 1122-1123. Es por ello que el Prof. Chiesa es del criterio que el efecto de la inferencia de negligencia que permite la mencionada doctrina es similar al de una inferencia permisible contra un

---

[5] **En la esfera criminal opera la Regla 15 de Evidencia. Aquí no hay efecto alguno de variar el peso de la prueba contra el acusado, y el jurado no viene obligado a deducir el hecho presumido aún cuando el acusado no produjera evidencia en contrario. En Pueblo v. Sánchez Molina, 134 D.P.R. 577 (1993), resolvimos que la Regla 15 de Evidencia no hace sino reducir el efecto de las presunciones perjudiciales al acusado a una mera inferencia permisible. Id. a la pág. 590. Una inferencia permisible permite pero no obliga a inferir el hecho presumido una vez probado el hecho básico. Aún si el acusado no presentara prueba, el juzgador no viene obligado a inferir el hecho presumido. Id. a la pág.**

acusado, según dispuesto en la Regla 15 de Evidencia. _Id_. Véase, además, Chiesa, _Jurisprudencia en la Zona Criminal_, 58 Rev. Jur. U.P.R. 1, 31-32 (1989).

La aplicación de res ipsa loquitur en Puerto Rico ha sido ampliamente criticada. El profesor Brau del Toro reconoce que dicha doctrina ha tenido vigorosos opositores, incluso en su sistema legal de origen, además de haber sido confundida e incomprendida. H.M. Brau del Toro, _Los Daños y Perjuicios Extracontractuales en Puerto Rico_, 2da ed., Publicaciones J.T.S., a la pág. 395. El ex Juez Presidente de este Tribunal, don José Trías Monge, se ha referido a la doctrina bajo análisis como una "teoría obsolescente", "antigua y desprestigiada", "desdichada" y de "traicioneros hilos". J. Trías Monge, _El choque de dos culturas jurídicas_, Equity, 1991, a las págs. 212 y 361-362. Asimismo, se ha catalogado la aplicación de dicha doctrina en nuestra jurisdicción como "incongruencia y desatino", a la luz de _Valle_ v. _Amer. Inter. Ins. Co._, _supra_, y su progenie. Demetrio Fernández Quiñones, _Responsabilidad Civil Extracontractual_, 59 Rev. Jur. U.P.R. 419, 422-427 (1990); Ernesto L. Chiesa Aponte, _Evidencia_, 60 Rev. Jur. U.P.R. 885, 898-901 (1991).[6] Ciertamente, coincidimos con el parecer de los distinguidos juristas en el sentido de que recurrir al res ipsa loquitur en nuestra jurisdicción desatiende lo que suscribiéramos desde _Gierbolini_ y _Valle_, _supra_.

Desde hace algún tiempo, hemos limitado bastante la aplicación de tal doctrina. En _Cotto_ v. _C. M. Ins. Co._, 116 D.P.R. 644, 650-651 y 653 (1985), nos negamos a aplicar la misma ante el evento de un accidente, en el que concluimos que no necesariamente tuvo que intervenir negligencia de la parte demandada, y resolvimos a la luz del requisito del Art. 1802 del Código Civil, _supra_, que impone a la parte actora probar la negligencia del demandado. Por su parte, en _Nieves López_ v. _Rexach Bonet_, _supra_, no se encontró suficiente prueba para aplicar la doctrina

---

595.

[6] **Véase, además, la crítica del Prof. Guaroa Velázquez, según citada en Luis Ribó Durán, _Derecho de Daños_, Ponencias y Coloquios, 1992, Barcelona, a las págs. 123-124.**

contra el demandado, por lo que se contrapuso a ésta lo resuelto por este Tribunal en Valle. En igual sentido, Marrero, Marrero, Ríos v. Albany Ins. Co., supra, ilustra una situación en la que también nos negamos a resolver bajo el *res ipsa loquitur*, porque la parte demandante no logró establecer satisfactoriamente los hechos que hubiesen justificado su aplicación.

Nos parece que nos encontramos en el momento oportuno para desterrar de nuestro ordenamiento jurídico una figura que desde que la importamos ha sido cuestionada, que incluso en el sistema de derecho del que proviene ha sido ampliamente criticada y que de un tiempo a esta parte hemos estado limitando e impidiendo su aplicación. Por ello, en lo sucesivo se hará caso omiso de la llamada doctrina de res ipsa loquitur a los fines de resolver las controversias sobre negligencia en los casos de daños y perjuicios. Las mismas serán resueltas conforme a nuestro derecho probatorio, según estatuido en nuestras Reglas de Evidencia y de acuerdo con la jurisprudencia interpretativa de las mismas. Al así resolver, no olvidamos que las reglas del derecho común angloamericano y de otros sistemas jurídicos pueden constituir materia útil para el estudio comparado y en ocasiones el desarrollo de instituciones autóctonas. Se llega a veces a la misma conclusión por caminos diferentes. Sin embargo, no nos es permisible intentar resolver las controversias de daños y perjuicios a espaldas de la doctrina civil aplicable. Gierbolini v. Employers Fire Ins. Co., supra. Nos corresponde, pues, darle contenido a nuestro derecho de responsabilidad aquiliana a la luz del Art. 1802 del Código Civil, supra, y los mecanismos disponibles en el sistema civilista de donde proviene. Toro Aponte v. E.L.A., res. el 31 de enero de 1997, 142 D.P.R. ____ (1997).

V

En el caso ante nuestra consideración, la prueba sólo demostró, y el tribunal sentenciador así lo reconoció, la forma como ocurrió el accidente y los daños sufridos. No desfiló prueba sobre las condiciones y particularidades de la botella que explotó, tampoco sobre la

adecuacidad –o falta de ella– de las condiciones imperantes en el Almacén que hayan podido ocasionar el accidente por virtud de un deber no cumplido. Tampoco se presentó prueba sobre la posible falta de cuidado en la forma en que se transportaron las botellas desde el Almacén hasta la camioneta, o sobre los posibles golpes que pudieron haber recibido las cajas en dicho trayecto. Mucho menos se presentó prueba pericial o de alguna otra naturaleza para demostrar cuáles pudieron haber sido las probables causas para que la botella de marras hubiera explotado. Es por ello que, aunque podría inferirse que el accidente ocurrió por la negligencia de alguien, ante un récord huérfano como éste, no puede imputarse a persona alguna dicha negligencia.

En fin, el demandante en este caso pretendió, y los tribunales inferiores lo complacieron, que por la mera ocurrencia de un accidente quedara probada la negligencia del demandado, a pesar de que es un hecho innegable que desde las personas más jóvenes hasta los más viejos, hemos almacenado y transportado con harta frecuencia, en diversas formas y circunstancias, botellas de agua de soda o de cualquiera otra gaseosa, sin que hayamos advertido la necesidad de recurrir a medios especiales para así hacerlo. Por otro lado, al momento en que explotó la botella, la misma estaba en posesión y exclusivo control del demandante, lo cual derrotaría de todos modos la aplicación de la doctrina de *res ipsa loquitur* a este caso. Igualmente, tenemos duda de que la evidencia presentada haya descartado la posibilidad de cualquier acción voluntaria del demandante como fuente total o parcial de la ocurrencia del accidente. Véase <u>Nieves López</u> v. <u>Rexach Bonet</u>, <u>supra</u>; y <u>Marrero, Marrero, Ríos</u> v. <u>Albany Ins. Co.</u>, <u>supra</u>.

El mero hecho de que acontezca un accidente no da lugar a inferencia alguna de negligencia. <u>Cotto</u> v. <u>C. M. Ins. Co.</u>, <u>supra</u>. El Art. 1802 del Código Civil de Puerto Rico, <u>supra</u>, fuente de nuestro derecho de daños, no permite tal conclusión. Para que prospere una acción en daños en nuestra jurisdicción, es preciso que el demandante demuestre, por preponderancia de prueba, la realidad del daño sufrido, la existencia de

un acto u omisión negligente y, además, el elemento de causalidad. La suficiencia, contundencia o tipo de prueba presentada, así como el valor que los tribunales le darán, dependerá, naturalmente, de las circunstancias particulares de cada caso de conformidad con nuestro derecho probatorio. Sin embargo, la prueba presentada deberá demostrar que el daño sufrido se debió con mayores probabilidades a la negligencia que el demandante imputa. Se requiere, además, que la relación de causalidad entre el daño sufrido y el acto negligente *no se establezca a base de una mera especulación o conjetura*. <u>Castro Ortiz</u> v. <u>Mun. de Carolina</u>, 134 D.P.R. 783, 793 (1993); <u>Rodríguez Crespo</u> v. <u>Hernández</u>, 121 D.P.R. 639, 649-650 (1988). Véase, además, José Puig Brutau, <u>Fundamentos de Derecho Civil</u>, T. II, V. III, 1983, Barcelona, a las págs. 80-104; J. Santos Briz, <u>La Responsabilidad Civil</u>, 7ma ed., T. I, Madrid, pág. 245.

En atención a lo anteriormente expuesto, se revoca la sentencia recurrida y se devuelve el caso al foro de instancia para que el demandante, que ya no puede descansar en la llamada doctrina de res ipsa loquitur, presente cualquier otra prueba que pueda tener en apoyo de su caso.


José A. Andréu García
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO**Error! Bookmark not defined.**

Alberto O. Bacó, en su carácter
de Administrador del Fondo del
Seguro  del Estado, Ex-rel:
Enrique Castillo de Jesús

    Demandantes-Recurridos

      v.                  CC-98-41     Certiorari

Almacén Ramón Rosa Delgado
Inc. y Royal Insurance Co.
of P.R.

    Demandados-Peticionarios

SENTENCIA

San Juan, Puerto Rico, a 30 de junio de 2000

    Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente, se revoca la sentencia del Tribunal de Circuito de Apelaciones y se devuelve el caso al foro de instancia para que continúen los procedimientos de conformidad con lo anteriormente expresado.

    Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.  El Juez Asociado señor Negrón García concurre con opinión escrita a la que se une el Juez Asociado señor Corrada del Río.  El Juez Asociado señor Rebollo López disiente sin opinión escrita.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Alberto O. Bacó en su carácter
de Administrador del Fondo del
Seguro del Estado y otros

Demandantes-Recurridos

v.                                    CC-1998-41    Certiorari

Almacén Ramón Rosa Delgado, Inc.
y otros

Demandados-Peticionarios


Opinión Concurrente del Juez Asociado señor Negrón García, a la cual se
une el Juez Asociado señor Corrada del Río


San Juan, Puerto Rico a, 30 de junio de 2000

La génesis de una rama del derecho o concepto jurídico no debe condicionar, sin más, su aceptación o rechazo en nuestro sistema. Sin embargo, para efectos de coherencia práctica y doctrinal, puede ser relevante, aunque no determinante, la experiencia habida en países de similar tradición.

De ahí que nos resulte inquietante el "destierro" sumario de <u>res ipsa loquitur</u> de nuestro ordenamiento sin atender (1) la naturaleza de esta doctrina a la luz del origen de nuestro derecho probatorio, (2) la función que realiza en nuestro ordenamiento y (3) las posibles equivalencias                que                le

encontramos en los sistemas jurídicos de estirpe civilista. También es cuestionable el "destierro" de esta figura, dada su patente inaplicabilidad a los hechos de este caso.

I

La doctrina de <u>res ipsa loquitur</u>, según reitera nuestro ordenamiento, **es de naturaleza evidenciaria**, no sustantiva. <u>Hermida Sotomayor</u> v. <u>Feliciano Sánchez</u>, 62 D.P.R. 55, 57 (1943). Si bien es cierto, como indica la Opinión mayoritaria, que nuestro derecho de daños es de marcado abolengo civilista, tanto así nuestro derecho probatorio es, casi en su totalidad, una incorporación del derecho norteamericano. "Nuestro derecho probatorio se nutre, por decir lo menos, del derecho probatorio federal y el de California. Las Reglas de Evidencia de Puerto Rico han sido tomadas de las Reglas Federales de Evidencia y, en ciertas ocasiones, del Código de Evidencia de California."[7]

**No es absurdo, entonces, que una doctrina evidenciaria norteamericana se haya importado a nuestro derecho probatorio; ambas comparten un origen común.**

Las críticas que ha recibido <u>res ipsa loquitur</u> en las propias jurisdicciones angloamericanas son meritorias, pero no tan simples y tajantes como las caracteriza la mayoría. La operación de la doctrina, que a veces se ha tomado, erróneamente, por una inflexible regla de derecho, se ha prestado al error. <u>Res ipsa loquitur</u> no es más que una <u>presunción judicial permisible</u>, pero se ha confundido con la <u>presunción legal</u> —como las que establecen las Reglas de Evidencia—, y la <u>responsabilidad vicaria</u> —como las encarnadas en los arts. 1803 al 1810 del Código Civil. La corrupción conceptual resultante ha desacreditado la doctrina, pero remite más a la confusión de figuras que al error en el razonamiento original.[8]

---

[7] **E. Chiesa, <u>Tratado de Derecho Probatorio</u>, vol. 1, pág. xix (1999);** Nunzio F. di Gangi, <u>Apuntes sobre la nueva Ley de Evidencia</u>, 19 Rev.D.P. 177, 177–78 (1979).

[8] Jolowisz, <u>International Encyclopedia of Comparative Law</u> (ed. A. Tunc), vol. XI, núm. 13 ("Procedural Questions"), pág. 34–36 (1986).

La operación racional que subyace la inferencia de negligencia de res ipsa loquitur, sin embargo, revela esta doctrina como un ejercicio deductivo, una forma de evidencia circunstancial. **Su lógica, que no distingue entre tradiciones jurídicas civilistas y angloamericanas, se manifiesta de igual manera en un breve recorrido por otras jurisdicciones.** De ahí que en Alemania surja, independientemente de la tradición angloamericana, la doctrina de "Anscheinbeweis", o prueba prima facie, que tiene un efecto esencialmente igual al de res ipsa loquitur.[9]

> "La prueba prima facie o de primera impresión («Anscheinbeweis») es de relevante importancia en los pleitos sobre actos ilícitos extracontractuales. Significa que una cierta situación de hecho corresponde, según la experiencia, a un curso causal típico y determinado. Entonces puede considerarse que la causa fijada ha producido cierto resultado y que la alegación ha de tenerse por probada. Corresponde este concepto a la apreciación de la prueba y no significa una inversión de la carga de probar, sino una mera facilitación de prueba.

> La prueba prima facie no releva al Juez de la necesidad de llegar a declaraciones fácticas en torno a la relación causal o a la cuestión de la culpa; ni le permite sustituir las declaraciones de hecho probados por meras verosimilitudes o presunciones. A través de la prueba prima facie puede deducirse, de un suceso dado, una relación causal con el resultado sobrevenido, o del resultado sobrevenido puede deducirse un cierto suceso como causa. Esta prueba hace, sólo con base en las circunstancias, que aparezcan como probados según la experiencia general de la vida los hechos que el que tiene la carga de probarlos había de demostrar, y hace superfluo que el obligado a probar cumpla esta carga procesal.

> No se trata de presunciones legales que admitan o no prueba en contrario, sino que la prueba prima facie puede ser debilitada probando que los hechos no ocurrieron en el caso concreto según es normal, bastando con acreditar que pudo el resultado sobrevenir de otra forma, para desvirtuar la prueba prima facie. Pero no es suficiente para destruir la prueba de primera impresión la simple indicación de la posibilidad de otra relación causal. [...]

> Si la prueba prima facie es insuficiente, el demandante habrá de probar los hechos constitutivos de su acción

---

**[9] De hecho, en Québec —jurisdicción civilista enclavada, como la nuestra, en un entorno angloamericano— ha sostenido desde hace medio siglo que no hay diferencia práctica entre la aplicación de res ipsa loquitur y las presunciones judiciales del Código Civil. Elder v. King [1957] B.R. 87, citado en Jolowisz, supra, pág. 37.**

judicial, y, si no lo consigue, ésta será desestimada." J. Santos Briz, <u>La Responsabilidad Civil</u>, vol. 2, pág. 1085-86 (1993).

De igual modo, la prueba <u>prima facie</u> ha sido incorporada "implícitamente"[10] en el ordenamiento español por vía judicial. En particular, responde a las presunciones no establecidas por ley permitidas por el Art. 1253 del Código Civil español (Art. 1205 nuestro).[11] La redacción de este artículo es clara y flexible; permite, a la vez, mantener el criterio del juzgador encaminado en un proceso lógico y evitar el formalismo extremo.[12]

Un desarrollo completo de la doctrina española de las presunciones judiciales —que de tanto provecho ha de ser al derecho puertorriqueño— trasciende el caso de autos.[13] Basta señalar las consecuencias prácticas que la hacen acertada en su razonamiento y apropiada para sustituir la doctrina de <u>res ipsa loquitur</u> sin provocar un vacío en nuestro derecho de daños.

<u>Primero</u>, quien quiera probar un hecho —como la negligencia— mediante una presunción judicial, tiene que demostrar aquel o aquellos hechos de los que ha de deducirse el presumido. Art. 1202 Código Civil. Así, la presunción no es arbitraria, sino que parte de premisas fundamentadas.

---

[10] **Santos Briz, <u>supra</u>, págs. 1088-89; Cf. J. Puig Brutau, <u>Fundamentos del Derecho Civil</u>, Tomo II, vol. III, pág. 123-24 (1984).**

[11] **Para una explicación del modo en que el Art. 1205 recoge el razonamiento de <u>res ipsa loquitur</u>, ver W. Luciano Quiñones, <u>Las presunciones judiciales y la doctrina de res ipsa loquitur</u>, 31 Rev.D.P. 55 (1991).**

[12] Otros ordenamientos civilistas abordan el tema de similar manera. Así, en **Italia** se discute la prueba "<u>in re ipsa</u>", G.P. Chironi, <u>La culpa en el derecho civil moderno</u> (trad. C. Bernaldo de Quirós), tomo II, pág. 448 (1928); en **Francia** la culpa virtual ("<u>faute virtuelle</u>"), H. y L. Mazeaud y A. Tunc, <u>Tratado teórico y práctico de la responsabilidad civil delictual y contractual</u> (trad. L. Alcalá-Zamora y Castillo), sec. 1687 (1977); en **Québec,** la presunción de hecho ("<u>présomption de fait</u>"), J.-L. Baudouin, <u>La résponsabilité civile délictuelle</u>, pág. 310, et seq. (1985).

[13] **Véase su exposición en M. Serra Domínguez, <u>Comentarios al Código Civil y complilaciones forales</u> (ed. M. Albaladejo), Tomo XVI, vol. 2º, págs. 607-795 (1991).**

<u>Segundo</u>, el vínculo entre el hecho demostrado y el que ha de presumirse debe surgir "según las reglas del criterio humano", Art. 1205 Código Civil, que a su vez se derivan de "máximas de experiencia del común sucederse de los hechos en la realidad práctica".[14]

<u>Tercero</u>, no queda a entera voluntad del juzgador la aplicación de una presunción judicial que, a todas luces, debe derivarse. De ahí que la prueba <u>prima facie</u> lleve a la formación de una presunción, no una mera inferencia. Se subsana así la vaguedad a la que puede llevar el carácter meramente permisible de <u>res ipsa loquitur</u>. Un error del juzgador al levantar u omitir una presunción sería revisable bajo los mismos criterios de error en la apreciación de la prueba.

<u>Cuarto</u>, "el enlace desaparece cuando se produce la prueba de lo contrario".[15] No queda entonces el demandado sujeto a un responsabilidad absoluta, sino obligado, para exonerarse, a producir prueba suficiente que rebata el enlace lógico que lleve a presumir el hecho en cuestión.

III

Aceptamos como correcta **la interpretación de los hechos** que hace la mayoría (Op. mayoritaria, pág. 8-10), pero advertimos que el caso de autos no es el recurso para exilar <u>res ipsa loquitur</u>. La aplicación de la doctrina, aun en su formulación tradicional, no se configura: estamos ante un <u>obiter dictum</u>.

Más allá de esa diferencia en enfoque, para fines de una plena aclaración conceptual, hemos ofrecido una alternativa civilista a la "desterrada" doctrina.

A fin de cuentas, la inequidad procesal en el ámbito probatorio de algunos casos de responsabilidad civil extracontractual llevó al desarrollo de la doctrina de <u>res ipsa loquitur</u> y su aplicación a casos diversos, desde accidentes por mantenimiento negligente del alumbrado eléctrico, <u>Rosado v. Ponce Railway & Light Co.</u>, 18 D.P.R. 609 (1912), Cf. <u>San Juan Light & Transit Co.</u> v. <u>Requena</u>, 224 U.S. 89 (1912), a

---

[14] **Serra Domínguez, <u>supra</u>, pág. 787.**

reclamaciones por impericia médica, Oliveros v. Abréu, 101 D.P.R. 209, 230 (1973), Riley v. Rodríguez Pacheco, 119 D.P.R. 762, 778-784 (1987).[16] Subsiste en nuestro ánimo grandes reservas de prescindir de esta doctrina, la cual ha ido siempre de la mano como complemento a las reglas de evidencia en casos de inequidad probatoria circunstancial.[17]

ANTONIO S. NEGRÓN GARCÍA
Juez Asociado

---

[15] Serra Domínguez, supra, pág. 789.

[16] Las acciones por mala práctica médica ilustran el problema. "El médico tiene la ventaja de su posición; el es presumiblemente un experto y el paciente un lego. El médico tiene conocimiento de qué se ha hecho y su significado; el paciente rara vez conoce el significado, él juzga mayormente por los resultados. Médicos disgustan testificar en contra de un compañero, especialmente si éste es de reputación notable. [...] En síntesis, el médico tiene la ventaja de conocimiento y de la prueba." L. Odell, La doctrina de res ipsa loquitur en casos de mala práctica médica, 8 Rev.Jur.U.I.P.R. 75, 77 (1973).

[17] Esta iniquidad procesal no es teórica, lo cual explica la necesidad de devolver el caso al Tribunal de Instancia. Aunque suscribimos ese resultado, no deja de preocuparnos si estamos creando un precedente, que afectará casos sometidos en los Tribunales de Primera Instancia y pendientes de adjudicación ante el Tribunal de Circuito de Apelaciones. ¿Implica que potencialmente habrá que celebrar una vista evidenciaria en aquellos casos en que se haya invocado -aplicado o no- la doctrina de res ipsa loquitur, y no haya recaído sentencia final y firme?