Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| PAULA MAYSONET MALAVÉ<br><br>Apelante<br><br>v.<br><br>MARCOS DAVID COLÓN DÍAZ Y OTROS<br><br>Apelado | KLAN202500190 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Sobre: Daños y Perjuicios (Patrono No Asegurado)<br><br>Caso Núm. TJ2022CV00032 |
|---|---|---|

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Domínguez Irizarry, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de julio de 2025.

Comparece ante nos la apelante, Paula Maysonet Malavé (en adelante, Maysonet Malavé o parte apelante), mediante recurso de apelación y nos solicita la revisión de la *Sentencia* emitida el 7 de febrero de 2025, notificada el 10 de febrero de 2025, por el Tribunal de Primera Instancia, Sala de Carolina. Mediante la misma, el Foro Primario declaró *No Ha Lugar* la demanda presentada por la parte apelante.

Por los fundamentos que expondremos a continuación, *confirmamos* la *Sentencia* apelada.

**I**

El 20 de enero de 2022 la parte apelante presentó una demanda por daños y perjuicios en contra de Marcos David Colón Díaz (en adelante, Colón Díaz), su esposa Maritza Hernández Vélez y la Sociedad Legal de Bienes Gananciales compuesta por ambos (en adelante y en conjunto, parte apelada).[1] En la misma, la señora Maysonet Malavé señaló que la parte apelada era dueña de la

---
[1] Apéndice del recurso, págs. 1-5.

lechonera *La Casita de David*, en Trujillo Alto, y que esta no estaba asegurada por la Corporación del Fondo del Seguro del Estado (en adelante, CFSE).

Igualmente, alegó que, para el 22 de agosto de 2021 a las 4:20pm, estaba trabajando en el referido negocio, cuando se resbaló con una sustancia en el piso de la cocina, provocando que su pie impactara la canal de una puerta, ocasionando una fractura del tobillo derecho. Explicó que, como consecuencia de la lesión, acudió a la sala de emergencia en el Hospital HIMA San Pablo Cupey. Asimismo, indicó que su herida requirió intervención quirúrgica, en la cual se requirió colocarle placas, alambres y tornillos en su pie. La parte apelante alegó que la referida lesión le dificultó hacer las tareas del hogar, caminar, y trabajar. En el pliego, la señora Maysonet Malavé sostuvo que la parte apelada fue negligente al no tomar las medidas adecuadas para evitar que sufriera la caída. Como consecuencia de lo anterior, solicitó una indemnización por los daños físicos y emocionales que experimentó. En específico, la parte apelante reclamó noventa mil dólares ($90,000.00) por la intervención quirúrgica del tobillo, dos mil dólares ($2,000.00) por tratamientos médicos, y diez mil dólares ($10,000.00) por los ingresos dejados de recibir.

Por su parte, el 10 de mayo de 2022, la parte apelada contestó la demanda.[2] En la misma, entre otras cosas, negó ser responsable por los daños que reclamó la señora Maysonet Malavé. Igualmente, señaló que los hechos alegados en la demanda eran consecuencia única y exclusiva de la negligencia de la parte apelante.

Luego de varios asuntos procesales, el 12 de julio de 2022, la parte apelante presentó una *Solicitud de Embargo Preventivo en Aseguramiento de Sentencia*.[3] En su escrito, le solicitó al Foro *a quo*

---

[2] *Íd.*, págs. 8-10.
[3] *Íd.*, págs. 14-16.

que ordenara el embargo de los bienes de la parte apelada, al amparo de lo dispuesto en el Artículo 13 de la *Ley del Sistema de Compensaciones Puerto Rico Accidentes del Trabajo,* Ley Núm. 45 del 18 de abril de 1935,11 LPRA sec. 16. El 25 de agosto de 2022 la parte apelada presentó una *Oposición a Solicitud de Embargo Preventivo en Aseguramiento de Sentencia,* mediante la cual rogó porque se celebrara una vista para evaluar la referida petición.[4]

Evaluados los escritos, el Tribunal de Primera Instancia ordenó una vista, la cual se celebró el 17 de octubre de 2022. Habiendo declarado la señora Maysonet Malavé, el 19 de octubre de 2022, el Foro Primario notificó una *Resolución,* mediante la cual denegó la solicitud de embargo por no haberse probado que existiese un riesgo de que la parte apelada ocultase sus bienes para evitar la ejecución de sentencia que pudiese recaer en su contra.[5]

Luego de varios incidentes procesales no relacionados a lo que nos ocupa, la representación legal de la señora Maysonet Malavé informó que esta no estaría disponible para testificar en el juicio por haber sufrido un percance de salud. Por ello, solicitó que se le permitiese presentar como prueba el testimonio vertido por esta en la vista de la solicitud de embargo.  Con la oposición de la parte apelada, y a tenor con la Regla 806 (B) de Evidencia de Puerto Rico, 32 LPRA Ap. VI, R. 806, el 13 de mayo de 2024, el Foro *a quo* autorizó la petición de la parte apelante.[6]

Así las cosas, el 17 de octubre de 2024, se celebró el juicio en su fondo. Según el testimonio de la señora Maysonet Malavé vertido en la vista de la solicitud de embargo, esta declaró que, el día de los hechos, a las 4:20pm, la parte apelada había comenzado a limpiar las paredes y el piso de la cocina con agua y jabón, cuando llegó un

---

[4] SUMAC, Entrada Núm. 23.
[5] Apéndice del recurso, págs. 249-255.
[6] *Íd.*, págs. 285-286.

grupo de personas que tuvo que atender.[7] Expresó que, por ello, la parte apelada le indicó que fuera a la cocina a preparar los alimentos solicitados. En el transcurso de entrar y salir de esta, la parte apelante relató que se resbaló con un canal mojado, de una puerta corrediza, produciéndose la caída en controversia. Adujo que, como consecuencia de la misma, se fracturó el tobillo derecho. Testificó que esperó alrededor de veinte (20) minutos en el suelo, hasta que llegó su esposo y su hijo, quienes la ayudaron a levantarse. Según declaró, posterior a ello acudió, a Hospital HIMA San Pablo Cupey. En la clínica, la refirieron a un ortopeda, quien posteriormente le operó el tobillo derecho. Según alegó, estuvo tres (3) meses recuperándose de la operación. No obstante, declaró que, posterior a ello, continuó experimentando dolor. En cuanto a la atención de la parte apelada, mencionó que esta le hizo tres (3) pagos para aportar a sus gastos médicos: uno de doscientos dólares ($200.00), otro de ciento cincuenta dólares ($150.00), y, finalmente, un pago de ciento veinticinco dólares ($125.00). Indicó que, luego realizado el último pago, no tuvo más comunicación con la parte apelada.

Asimismo, en el juicio la parte apelante presentó a dos (2) testigos, adicionales al testimonio presentado por la señora Maysonet Malavé en la vista de la solicitud de embargo. El primero en declarar fue el doctor Omar Gómez Medina, quien declaró en calidad de perito en el área de la medicina de la parte apelante.[8] Este declaró que, luego de revisar los expedientes de la señora Maysonet Malavé, concluyó que esta tenía una incapacidad de cinco por ciento (5%) de la extremidad inferior. No obstante, a preguntas del contrainterrogatorio, el Perito declaró que no evaluó personalmente a la parte apelante, sino que hizo su análisis utilizando el expediente

---

[7] Transcripción de la vista de embargo, págs. 3-16.
[8] Transcripción del juicio en su fondo, págs. 20-64.

médico de la señora Maysonet Malavé y las *Guías de la Asociación Médica Americana.*

El segundo testigo presentado en el juicio en su fondo lo fue el señor Juan Colón, pareja de la parte apelante. En esencia, este declaró que, el día de los hechos, recibió una llamada de la señora Maysonet Malavé, quien le indicó que se había lastimado un pie al caerse en el referido negocio.[9] Testificó que, al llegar allí, la encontró en el suelo mojado con jabón, y que luego procedió a llevarla al Hospital HIMA San Pablo Cupey. Sobre la condición actual de la señora Maysonet Malavé, declaró que se encontraba en estado de coma por hechos no relacionados al presente caso.

Por otro lado, la parte apelada presentó dos (2) testigos a su favor. El primer testigo en declarar lo fue el señor Colón Díaz, quien declaró que el horario de mayor movimiento de clientes en el establecimiento en controversia era entre las 3:00pm y 6:00pm. Relató que el día de los hechos, entre las 3:30pm y 3:45pm, se encontraba picando lechón para unos clientes cuando escuchó a la parte apelante decir que se había caído.[10] Contrario a lo declarado por la señora Maysonet Malavé, este testificó que, al ser el horario más concurrido del negocio, no se estaba limpiando la cocina en ese momento, por lo que el suelo estaba "completamente seco".[11] Adujo que, la costumbre en el negocio era que, no se comenzaba a limpiar la cocina hasta que no se terminara de vender todo el lechón, y que al momento de los hechos, esto no había ocurrido. Igualmente, declaró que no había una puerta en el área en que se resbaló la parte apelante, y, por lo tanto, tampoco existía el canal que mencionó en su testimonio.[12]

---

[9] *Íd.*, págs. 66-70.
[10] *Íd.*, págs. 73-106.
[11] *Íd.*, pág. 87.
[12] *Íd.*, págs. 87-88.

Por último, testificó la señora Verónica Figueroa González, quien era empleada del negocio en el cual ocurrieron los hechos.[13] Esta declaró que el día de los hechos, entre las 3:00pm y 3:30pm, asistió a la parte apelante cuando se cayó. Especificó que la colocó en una silla, y que, al llegar su familia, la ayudó a moverse al vehículo. Igualmente, testificó que el piso se encontraba seco al momento del accidente, ya que estaba prohibido comenzar la limpieza del mismo hasta que no hubiese clientes. [14] Además, declaró que el referido canal no existía.[15]

Evaluada la prueba presentada por ambas partes, el 10 de febrero de 2025, el Foro Primario notificó la *Sentencia* aquí apelada, mediante la cual, concluyó que la parte apelada no era responsable de la caída que sufrió la señora Maysonet Malavé.[16] Fundamentó su proceder en que la parte apelante no demostró cuál fue la condición peligrosa que le ocasionó la caída, o que la parte apelada falló en mantener el lugar donde ocurrió la caída libre de condiciones peligrosas. Indicó que la parte apelante tampoco probó que la omisión de la parte apelada fuese la causa próxima de su accidente o que probablemente causó la misma. Por tanto, el Foro *a quo* declaró *No Ha Lugar* la demanda.

Inconforme, el 6 de marzo de 2025, la parte apelante presentó su recurso ante nos, en el cual arguyó la comisión del siguiente señalamiento de error:

> Erró el TPI al determinar que la señora Paula Maysonet Malavé no probó la negligencia de su patrono no asegurado, a pesar de la incontrovertible realidad de que en la cocina de la lechonera existía una condición peligrosa creada por su propio patrono no asegurado, lo que ocasionó la caída de la señora Maysonet y los daños resultantes.

---

[13] *Íd.*, págs. 108-114.
[14] *Íd.*, pág. 111.
[15] *Íd.*, pág. 112.
[16] Apéndice del recurso, págs. 380-395.

Por su parte, el 27 de mayo de 2025, la parte apelada presentó su oposición al recurso, en la cual señaló que el Foro Primario actuó correctamente al adjudicarle credibilidad a la prueba presentada en el juicio por esta.

**II**

**A**

Es principio rector en materia de derecho civil extracontractual que el que causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. Artículo 1536 del Código Civil de Puerto Rico, 31 LPRA sec. 10801.[17] Como corolario de lo anterior, la doctrina reconoce que toda acción sobre responsabilidad por daños y perjuicios, predicada en los términos del referido estatuto, únicamente procede si media la forzosa concurrencia de los siguientes elementos: 1) un daño real; 2) una acción u omisión culposa o negligente y; 3) un nexo causal entre el daño y la conducta culposa o negligente. *Inmob. Baleares et al. v. Benabe et al.*, 2024 TSPR 112, 214 DPR ___ (2024); *Sucn. Mena Pamias et al. v. Meléndez et al.*, 212 DPR 758, 768 (2023); *Nieves Díaz v. González Massas*, 178 DPR 820, 843 (2010).

Conforme lo dispone el estado de derecho vigente, la culpa o la negligencia consiste en la falta de cuidado al no anticipar o prever las consecuencias de un acto, tal y como lo haría una persona prudente y razonable en iguales circunstancias. *Sucn. Mena Pamias et al. v. Meléndez et al.*, supra, pág. 768; *Pérez et al. v. Lares Medical et al.*, 207 DPR 965, 976-977 (2021); *Nieves Díaz v. González Massas*, supra, pág. 844. Siendo ello así, la norma exige que se actúe con el grado de cuidado, diligencia, vigilancia y precaución que las particularidades del asunto de que trate exijan. *Camacho*

---

[17] Advertimos que el Artículo 1802 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 5141, fue derogado por el Artículo 1536 del Código Civil de 2020, 31 LPRA sec. 10801. No obstante, en casos recientes, el Tribunal Supremo se ha basado en la jurisprudencia bajo el antiguo Código Civil.

*Rivera v. Richard Mitchell, Inc.*, 202 DPR 34, 62 (2019); *Monllor v. Soc. de Gananciales*, 138 DPR 600, 604 (1995). Cuando el alegado daño es producto de una omisión, el promovente está obligado a demostrar la existencia de un deber jurídico de actuar atribuible al causante, que, de no haberse incumplido, hubiese evitado la ocurrencia del agravio aducido. *Consejo Cond. Plaza del Mar v. Jetter*, 169 DPR 643, 655 (2006); *Soc. de Gananciales v. G. Padín Co., Inc.*, 117 DPR 94, 105-106 (1986).

Cabe señalar que, la adjudicación de responsabilidad civil extracontractual y, con ella, el deber de indemnizar presupone la existencia de un nexo causal entre el acto culposo o negligente y el daño acaecido. En virtud de esta premisa, la doctrina ha sido enfática al establecer que sólo se han de resarcir aquellos agravios que constituyen una consecuencia lógica del hecho que impone tal deber. *Pérez et al. v. Lares Medical et al.*, supra, págs. 976-977; *López v. Porrata Doria*, 169 DPR 135, 152 (2006).

Por tal razón, en la materia que atendemos, nuestro ordenamiento jurídico descansa en la teoría de la causalidad adecuada, la cual expresamente dispone que no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que, ordinariamente, lo produce según la experiencia general. *Sucn. Mena Pamias et al. v. Meléndez et al.*, supra, pág. 768; *Cruz Flores et al v. Hosp. Ryder et al.,* 210 DPR 465, 484-485 (2022); *Pérez et al. v. Lares Medical et al., supra*, pág. 977; *López v. Porrata Doria, supra*, págs. 151–152; *Nieves Díaz v. González Massas*, supra, pág. 844.

Así pues, para fines de imputar negligencia, es forzoso identificar si el demandado podía prever, dentro de las circunstancias particulares pertinentes, que su acción u omisión podría causar algún daño. *Cruz Flores et al. v. Hosp. Ryder et al.,*

supra, pág. 484; *Camacho Rivera v. Richard Mitchell, Inc.,* supra, pág. 41; *Pons v. Engebretson,* 160 DPR 347, 355 (2003). Cónsono con el deber de previsión, una persona sólo es responsable de las consecuencias probables de sus actos. *Blás v. Hosp. Guadalupe,* 146 DPR 267, 298 (1998). De ahí que se reconozca que la mera ocurrencia de un accidente no constituye prueba de la negligencia del demandado en una acción sobre daños y perjuicios. *Admor. F.S.E. v. Almacén Ramón Rosa,* 151 DPR 711, 724 (2000).

Conforme a ello, cuando se trata de un accidente en un establecimiento comercial, nuestro ordenamiento jurídico ha esbozado que, a pesar de que el dueño del mismo tiene el deber de tomar las medidas necesarias para propiciar un ambiente razonablemente seguro para su clientela, esto no conlleva una responsabilidad absoluta frente a cualquier daño sufrido. *Ramos Milano v. Wal-mart,* 168 DPR 112, 117-118 (2006). Por tanto, recae sobre el demandante demostrar por preponderancia de la prueba, que existían condiciones peligrosas en el establecimiento, que eran de conocimiento del dueño, y que la misma con mayor probabilidad fue la que le ocasionó el accidente. *Íd.,* pág. 118; *Admor. F.S.E. v. Almacén Ramón Rosa,* supra, pág. 725.

**B**

Es sabido que, en nuestro ordenamiento jurídico, "la tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada […]". *Semidey Ramos et al. v. Fcia. Belmonte et al.,* 211 DPR 222, 232 (2023); *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 778-779 (2022); *Gómez Márquez et al. v. El Oriental,* 203 DPR 783, 792 (2020), citando a *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 771 (2013). De ahí que las determinaciones de credibilidad que realiza el tribunal primario están revestidas de

una presunción de corrección, razón por la cual, en este aspecto, gozan de un amplio margen de deferencia por parte del foro intermedio. *Dávila Nieves v. Meléndez Marín,* supra, pág. 771. Asimismo, se ha establecido como norma que, un tribunal apelativo está impedido de sustituir o descartar, por sus propias apreciaciones, las determinaciones de hechos que realiza el foro sentenciador, fundamentando su proceder en un examen del expediente sometido a su escrutinio. *Íd.,* págs. 770-771.

De ordinario, el Tribunal de Primera Instancia es quien está en mejor posición para aquilatar la prueba testifical que ante sí se presentare, puesto que es quien oye y observa declarar a los testigos. *Ortiz Ortiz v. Medtronic,* supra, pág. 779*.; Gómez Márquez et al. v. El Oriental,* supra, pág. 792; *López v. Dr. Cañizares,* 163 DPR 119, 136 (2004). En este contexto, el juzgador de hechos goza de preeminencia al poder apreciar sus gestos, contradicciones, manierismos, dudas y vacilaciones, oportunidad que le permite formar en su conciencia la convicción de si dicen, o no, la verdad.

Ahora bien, la normativa antes expuesta no es de carácter absoluto. Si bien el arbitrio del foro primario es respetable, sus dictámenes están sujetos a que los mismos se emitan conforme a los principios de legalidad y justicia. *Dávila Nieves v. Meléndez Marín,* supra, págs. 771-772; *Méndez v. Morales,* 142 DPR 26, 36 (1996). Al amparo de ello, el ordenamiento jurídico vigente dicta que el criterio de deferencia antes aludido cede, entre otras instancias, cuando se determina que el juzgador de hechos incurrió en pasión, prejuicio, parcialidad o error manifiesto. *Gómez Márquez et al. v. El Oriental,* supra, pág. 793.

**III**

En el caso ante nos, la parte apelante plantea que el Tribunal de Primera Instancia incidió al concluir que esta no demostró la

negligencia de la parte apelada, así como el nexo causal entre esta y su accidente. Evaluadas las posturas de ambas partes, y en conjunto con la prueba y la transcripción de los procedimientos que obra en autos, procedemos a expresarnos.

Tal cual expresado en el resumen doctrinal, es norma reiterada en nuestro ordenamiento jurídico que el proponente de una causa de acción por daños y perjuicios debe probar, por preponderancia de la prueba, que sufrió un daño real como consecuencia racional de la acción u omisión de la otra parte. Específicamente, cuando se trate de un acto negligente por omisión, la parte proponente debe demostrar que el demandado tenía un deber jurídico de actuar que, si se hubiese cumplido, el daño no hubiese ocurrido. Igualmente, se debe analizar la controversia bajo el precepto de si una persona prudente y razonable en la misma circunstancia pudo haber previsto que el daño ocurrido era una consecuencia lógica de sus actos.

De la misma forma, cuando se trate de un incidente en un establecimiento comercial, nuestro estado de derecho ha reconocido que el dueño de un negocio debe tomar las medidas necesarias para mantener un ambiente seguro. No obstante, esta responsabilidad no es absoluta y recae sobre la parte promovente de la causa de acción demostrar que existía una condición peligrosa conocida por el dueño, y que esta razonablemente le ocasionó el daño.

En el caso ante nos, el Tribunal de Primera Instancia tuvo ante sí, entre otras cosas, la transcripción de lo declarado por la parte apelante en la vista de embargo, así como el testimonio de cuatro (4) testigos. Por un lado, los testimonios presentados por la parte apelante relataron que, por alegadamente haberse resbalado con el canal húmedo de la puerta de la cocina, esta se cayó y sufrió una lesión. Igualmente, surge del relato de la señora Maysonet Malavé que fue alegadamente la parte apelada quien mojó con jabón

el piso y las paredes mientras limpiaba a las 4:20pm. No obstante, no surge que la parte apelante presentara fotos o videos sobre le lugar de los hechos que ilustraran al Foro Primario de las condiciones de la zona.

Por otro lado, los testimonios que presentó la parte apelada contrarrestaron lo declarado por la señora Maysonet Malavé. En específico, estos relataron que la costumbre en el negocio era que, mientras hubiese público que atender y el lechón no se hubiese terminado de vender, no se podía comenzar con la limpieza de la cocina. Por lo cual, estos testificaron que era imposible que se estuviese limpiando la cocina al momento en que ocurrieron los hechos, ya que el negocio, entre las 3:00pm y 3:45pm, se encontraba en su horario más concurrido, y, por ende, no era posible que la referida zona estuviese mojada. Además, declararon que tampoco existía un canal en esa área, dado que no había una puerta en esa zona.

De este modo, aquilatada la prueba presentada, el Foro Primario concluyó que, a pesar de no albergar duda de que la señora Maysonet Malavé sufrió un accidente que le lastimó el tobillo derecho, esta no demostró por preponderancia de la prueba que existiese una condición peligrosa que le ocasionara la caída. Tampoco probó que la parte apelada falló en su deber de mantener el establecimiento seguro, y que esta omisión fuese la causa de su caída. Por lo cual, determinó que la parte apelante no probó que la negligencia de la parte apelada le ocasionó la caída. Conforme a la *Sentencia* apelada, el Foro *a quo* le otorgó mayor credibilidad a los testimonios presentados por la parte apelada, en los cuales se afirmó que no era posible que se estuviese limpiando el área en controversia, dado que el negocio se encontraba en su horario de mayor concurrencia de clientes.

Tras evaluar la prueba que obra en autos, nos vemos forzados a coincidir con la determinación del Tribunal de Primera Instancia. A pesar de que la parte apelante demostró que tuvo una caída que le causó una lesión en el tobillo derecho, esta no presentó evidencia que demostrara que existía una condición peligrosa en el establecimiento de la cual la parte apelada tenía conocimiento. Tampoco logró probar que la parte apelada falló en su deber de mantener el lugar seguro, y que su omisión le hubiese causado la caída. Por consiguiente, es nuestra apreciación que la señora Maysonet Malavé no probó los elementos que exige su causa de acción.

Debido a que el Tribunal de Primera Instancia es quien tiene la oportunidad de oír y observar a los testigos declarar, nuestro ordenamiento jurídico exhorta a que, en ausencia de pasión, perjuicio, parcialidad o error manifiesto, los Foros Apelativos les brinden deferencia a sus determinaciones de hechos. Por tanto, en el caso ante nos, le correspondía a la parte apelante derrotar la presunción de corrección que cobija la decisión del Foro *a quo*. Por entender que la señora Maysonet Malavé no derrotó la misma, al evaluar la prueba ante nos y el derecho aplicable, justipreciamos que el Foro *a quo* no cometió los errores señalados, por lo que sostenemos el dictamen apelado. Aunque el Foro apelado erró al indicar en su *Sentencia* que la señora Maysonet Malavé había fallecido, ello no incide en la determinación de negligencia que aquí revisamos.

**IV**

Por los fundamentos que anteceden, se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.  El Juez Pérez Ocasio disiente sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones